UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:07-CR-654-ERW |
| | ) |
| CORTEZ D. SIPES, | ) |
| | ) |
| Defendant. | ) |

SENTENCING HEARING

BEFORE THE HONORABLE E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

JULY 14, 2008

**APPEARANCES:**

For Plaintiff:     Cristian M. Stevens, AUSA
                   **OFFICE OF U.S. ATTORNEY**
                   111 South Tenth Street, 20th Floor
                   St. Louis, MO  63102

For Defendant:     Kristy Lynn Ridings, Esq.
                   **WELBY AND RIDINGS, LLC**
                   1010 Market Street, Suite 1720
                   St. Louis, MO  63101

*REPORTED BY:*     *Gayle D. Madden, CSR, RDR, CRR*
                   *Official Court Reporter*
                   *United States District Court*
                   *111 South Tenth Street, Third Floor*
                   *St. Louis, MO  63102*
                   *(314) 244-7987*

2

1  (Proceedings started at 2:39 p.m.)

2  (The following proceedings were held in open court and
3  with the Defendant present.)

4  THE COURT: The case number or the style of the case
5  is Cortez D. Sipes versus or United States versus Cortez
6  Sipes. I'll get it right in a minute. S1-4:07-CR-00654-ERW.

7  Is the Government ready?

8  MR. STEVENS: Yes, Your Honor.

9  THE COURT: Defendant ready?

10  MS. RIDINGS: Yes, Your Honor.

11  THE COURT: There are no objections, is that true?

12  MS. RIDINGS: That is true, Your Honor. I had not
13  filed a written statement. We needed some clarification with
14  regard to my client's priors. The formal records, the
15  official records, have been received by the Probation Office
16  and were shown to me as well as my client this morning in
17  court. We're satisfied with those records. We would have no
18  objection. My client did ask me to point out, though, in
19  paragraph 53, he pointed out to me today that it indicates
20  Missouri Board of Probation and Parole records indicate he has
21  a gang-related tatoo described as "Crips" on his arm with the
22  nickname "Dove" inscribed, and he says he does not have that
23  tattoo, Your Honor, and I understand the records may indicate
24  that, but that is not on his arm.

25  THE COURT: Okay. Well, I will direct that the

3

1    paragraph 53 that starts with "According to" and ends with
2    "cross" be redacted.  Any objection, Mr. Stevens?
3            MR. STEVENS:  No objection from the Government, Your
4    Honor.
5            THE COURT:  The Presentence Report is accordingly
6    ordered amended.
7            MS. RIDINGS:  Thank you, Your Honor.
8            THE COURT:  Thank you.
9            I shall now proceed to make calculations under the
10   United States Sentencing Guidelines.  First, let me say I
11   recognize that since January 12th, 2005, those Guidelines are
12   advisory and not mandatory.  On that date, the United States
13   Supreme Court said the Guidelines were only advisory, not
14   mandatory.  They still require judges to make calculations
15   under the Guidelines, to arrive at a sentencing range, and to
16   consider that range along with other factors.
17           Today, those factors I'll be considering include the
18   impact of the parties' Plea Agreement on any sentencing
19   issues.  I'll be hearing evidence that either party cares to
20   present.  I'll hear statements of counsel and of Mr. Sipes if
21   he cares to speak.  I'll then decide if any departures should
22   be made under the Guidelines.
23           I'll consider all the factors in 18 United States
24   Code § 3553(a) to decide whether to impose a Guideline
25   sentence or a non-Guideline sentence.  Those factors include

4

1 the nature and circumstances of the offense and history and
2 characteristics of the defendant, the need for the sentence
3 imposed to reflect the seriousness of the offense, to promote
4 respect for the law, and to provide just punishment for the
5 offense, to afford adequate deterrence to criminal conduct, to
6 protect the public from further crimes of the defendant, to
7 provide the defendant with needed educational or vocational
8 training, medical care, or other correctional treatment in the
9 most effective manner, the kinds of sentences available, and
10 the need to avoid sentencing disparity among similarly
11 situated defendants facing similarly situated offenses.
12     In this case, the 2007 edition of the Guideline
13 manual was used. The Guideline for violation of 18 United
14 States Code § 922(g)(1) is found in 2K2.1 of the manual.
15 Mr. Sipes has one prior conviction for a crime of violence,
16 being an assault of a law enforcement officer,
17 Document No. 22051-00480-01. The base offense level is 20.
18 Four levels are added because the firearm had an altered or
19 obliterated serial number under 2K2.1(b)(4). Three levels are
20 reduced for Mr. Sipes' full and timely acceptance of
21 responsibility under 3E1.1 (a) and (b). The total offense
22 level is 21. His criminal history category is IV. The
23 sentencing range is from 51 to 71 months. Those crimes
24 consist of possession of a controlled substance in '04, Count
25 II, possession of up to 35 grams of marijuana; in '05, assault

5

1 of a law enforcement officer, Count II, resisting arrest; and
2 five, possession of a controlled substance.
3     At this time, do you have any lawful cause or reason
4 to assign to the Court or do you know of any reason why I
5 should not sentence you at this time, Mr. Sipes?
6     THE DEFENDANT: No, Your Honor.
7     THE COURT: All right. I'll hear first from
8 Mr. Stevens, then from Ms. Ridings, and finally from you, sir,
9 if you care to speak.
10     MR. STEVENS: Thank you, Judge. I would just point
11 out, during the course of plea negotiations, the Government
12 agreed to dismiss two of the three counts in the indictment,
13 and the Government would so move today. That leaves Count II,
14 which the Defendant pleaded guilty to, which is possession of
15 a firearm. As the Court noted, that firearm had an
16 obliterated serial number, which raises concerns. The other
17 concern the Government has in particular is the assault of a
18 law enforcement officer prior conviction that this Defendant
19 has in which the Defendant punched a police officer in the
20 face. Obviously, that's a concern. It is counted as a crime
21 of violence under the Guidelines, and for those reasons, the
22 Government requests a sentence within the Guideline range,
23 Your Honor.
24     THE COURT: All right. I do note that also the
25 Government failed to or not failed to but under consideration

6

1 probably from negotiations with Ms. Ridings did not include a
2 four-point violation that might otherwise have been added, is
3 that correct?
4       MR. STEVENS:  That's correct, Judge.  That was
5 directly in response to a request by Ms. Ridings, and that was
6 an issue we negotiated during the course of the Plea
7 Agreement.
8       THE COURT:  All right.  Thank you.  Ms. Ridings.
9       MS. RIDINGS:  Thank you, Your Honor.  I would also
10 ask the Court to sentence my client within the Guideline
11 range.  Specifically, I would ask the Court to consider a
12 sentence at the low end.  My client does have an extended
13 criminal history for his young age.  I would point out to the
14 Court that shortly before this offense took place his father
15 was murdered.  Mr. Sipes had an incredibly difficult time
16 dealing with that murder.  Certainly, he's had a lot of time
17 to think about it during his current period of incarceration.
18       I would point out, Judge, that Mr. Sipes is the
19 primary caregiver for his five-year-old and four-year-old
20 sons, and my conversations I've had with him -- more so than
21 talking about this case, we've talked about his children.
22 He's very eager to get back to them.  Something that he said
23 to me this morning when I was visiting with him is actually
24 something I usually hear from the bench.  He said, "I just
25 need to get out of here and stay away from the fools I've been

7

```
 1  dealing with."  So --
 2            THE COURT:  Boy, is that ever -- is that ever right.
 3            MS. RIDINGS:  Yes.  So I was actually very impressed
 4  with that, Your Honor, that that came before hearing that come
 5  from the Court.  Those things taken into consideration, Your
 6  Honor, I would ask the Court to consider a sentence at the low
 7  end.
 8            THE COURT:  Okay.  I'm interesting in hearing what
 9  you have to say, but I want to look at some things first.  You
10  have a lot of people here today, don't you?
11            THE DEFENDANT:  (Nods head up and down.)
12            THE COURT:  They haven't given up on you yet, have
13  they?
14            THE DEFENDANT:  No, Your Honor.
15            THE COURT:  You know, there's going to come a time if
16  you continue messing around with drugs and you'll be before --
17            That's okay.  Don't worry about the child talking.
18  That's okay.  Children have a way of talking, and it's music
19  to my ears, and it doesn't bother me a bit.
20            You'll look around sooner or later, and there won't
21  be anybody back there because they're going to get tired of
22  hearing you say you're sorry and you'll never do it again, and
23  so that's one thing.
24            The other thing -- it shows you've never held
25  employment.  What's that all about?  You've never had a job in
```

8

1  your life?

2  THE DEFENDANT:  Like, I had -- I had a job, but it
3  wasn't for that long.  It was like a week or two.

4  THE COURT:  Well, you told Ms. Ridings you want to
5  get back and support your family.  How are you going to
6  support them if it's not dealing drugs?

7  THE DEFENDANT:  I have an uncle who rehab houses.

8  THE COURT:  Okay.

9  THE DEFENDANT:  He said I could come on with him.

10  THE COURT:  Okay.  Well, you have good health.  You
11  have no history of a mental problem.  You have someone who,
12  apparently, is staying by you with your kids.  You suffered
13  grievously the loss of your father.  You've refused to discuss
14  your drug usage, so I don't really know what that's all about.

15  So there are some positive things.  With this -- when
16  I see this kind of family support, it usually means there's
17  something really good about the person because I don't see
18  that a lot.

19  So if you care to speak, this is your chance.  I'd be
20  glad to hear whatever you have to say.

21  THE DEFENDANT:  Your Honor, basically, I've said all
22  I have to say.

23  MS. RIDINGS:  May I have a word with my client, Your
24  Honor?

25  THE COURT:  Sure.

9

1  THE DEFENDANT: Your Honor --

2  THE COURT: Go ahead.

3  THE DEFENDANT: Your Honor, I would like to take this
4  time to apologize to my family for taking them through these
5  things and to tell them that I'm sorry and that in the future
6  I'm going to make it right.

7  THE COURT: You know, I really believe you're sincere
8  about that because you -- you mentioned to Ms. Ridings, who is
9  a very good lawyer, that -- because she pointed -- picked up
10  on it, too -- we don't often hear a person realize that the
11  biggest problem in their life is dealing -- when they have as
12  much drug experience as you have, it comes from hanging around
13  with the wrong people. It's not complicated. If you have a
14  smart guy like you and you start hanging around knuckleheads,
15  it gets you in trouble and you go right back to hanging out
16  with them, then you're dumber than they are. So if you've
17  already figured out that you need to change your company,
18  maybe move to a different city, maybe a different state, your
19  whole life could be different, but if you do the same thing
20  over and over again, then the problem you're going to have is
21  if you ever come back to federal court with all these drug
22  convictions, the next time you're here, you're going to be
23  looking at a life sentence. So you've really dug yourself a
24  hole. You have to change. You have to change because if you
25  don't you're going to spend the rest of your life in prison.

10

1 Just it's not complicated.

2 Okay. Well, enough of that. I just -- I -- I always
3 feel more sorry for the family than I do for the person who
4 stands here because you made the decisions and they're the
5 ones that have to suffer along with you, and it's always --
6 it's always difficult to have to look them in the face and
7 send somebody to prison. I'd rather be sending you to
8 business school or someplace, but that's not possible.

9 Under the Sentencing Reform Act of 1984 and the
10 provisions of 18 United States Code § 3553(a), it is the
11 Judgment of the Court that Mr. Cortez D. Sipes is committed to
12 the custody of the Bureau of Prisons to be imprisoned for a
13 term of 57 months. That's the lowest sentence that is
14 available today based on the Plea Agreement.

15 While in the custody of the Bureau of Prisons, it is
16 recommended that Defendant be evaluated for participation in
17 the Residential Drug Abuse Program if consistent with Bureau
18 of Prisons policies.

19 Upon release from imprisonment, he shall be placed on
20 supervised release for a term of two years.

21 Within 72 hours of release from the custody of the
22 Bureau of Prisons, he shall report in person to the Probation
23 Office in the district to which he is released.

24 While on supervision, he shall comply with the
25 standard conditions that have been adopted by this Court and

```
                                                             11
 1   shall comply with the following additional conditions:

 2           He shall refrain from any unlawful use of a

 3   controlled substance and submit to a drug test within 15 days

 4   of the beginning of supervision and at least two periodic drug

 5   tests thereafter for use of a controlled substance.

 6           He shall participate in a drug or alcohol abuse

 7   treatment program approved by the United States Probation

 8   Office, which may include substance abuse testing, counseling,

 9   residence in a community corrections center, residence in a

10   comprehensive sanctions center, residential reentry center, or

11   inpatient treatment in a treatment center or hospital.  He

12   shall pay costs associated with substance abuse services based

13   on a copayment fee established by the United States Probation

14   Office.  Copayments shall never exceed the total cost of

15   services provided.

16           He shall submit his person, residence, office, or

17   vehicle to a search or searches conducted by the United States

18   Probation Office at reasonable times and in a reasonable

19   manner based upon reasonable suspicion of contraband or

20   evidence of a violation of a condition of release.  He shall

21   warn any other residents that the premises may be subject to

22   searches under this condition.

23           This says if not obtained while in the Bureau of

24   Prisons' custody that you get your GED under supervision.  I'm

25   telling you to get the GED while you're in prison and get some
```

12

1   more classes.  I'm going to make -- try to make some classes
2   available to you, and take advantage of every technical
3   opportunity that you can have to get some training.  If you've
4   never been employed, at your age and with the amount of money
5   it's going to take to support this family, you're going to
6   have to be better prepared to get a better job, so you better
7   start now in preparing yourself for that better job when you
8   get out of prison.
9           The Court orders no fine.  Mr. Sipes has a negative
10  net worth of $275.  No fine is imposed.  He has no ability to
11  pay a fine.  I must order a special assessment of $100 which
12  is due and payable immediately or as soon thereafter as he can
13  make the payment.
14          I have the option of running that other sentence
15  consecutively to or concurrently to this sentence, and I'm
16  choosing to run it concurrently, so this sentence shall run
17  concurrently to the sentence in 4:0 -- or strike that -- in
18  051 -- 051-3458.
19          Any notice of appeal you have a right to file must be
20  filed within 10 days of this date.  If you're unable to pay
21  the cost of an appeal, you may apply for leave to appeal in
22  forma pauperis, and the Clerk of the Court shall assist you
23  with those filings.
24          I'm recommending the 500-hour drug treatment program.
25          Are there any other recommendations, Ms. Ridings?

```
                                                                 13
 1              MS. RIDINGS:  Your Honor, my client has asked that
 2    he, if possible, be placed in a facility as close to the
 3    St. Louis area as possible.
 4              THE COURT:  It is so recommended.
 5              MS. RIDINGS:  Thank you.
 6              THE COURT:  Don't disappoint these folks anymore.
 7              Yes.
 8              MAN IN GALLERY:  Yes.  I would just like to introduce
 9    myself.  I'm --
10              THE COURT:  I can't hear you.
11              MAN IN GALLERY:  I'd like to introduce myself.  I'm
12    Cortez's godfather.
13              THE COURT:  Yes.
14              MAN IN GALLERY:  She's right.  He has been up under a
15    number of stress or a lot of us have, but if you can make it
16    easier for us to get to him, it would make it better for
17    Cortez.  Everything the Judge is telling him is right.  Me and
18    his father were best friends over 20 years, and the last time
19    I talked to him was about three minutes before he got killed,
20    and it is hard out there, but it don't make it no better when
21    you have these here to look after, and the only thing I'm
22    asking for him as a father -- do your best while you in there,
23    and you'll do better out here because right now you are a
24    bill.  A phone call, money on the books -- that's a bill, and
25    kids need to be taken care of, and he did have a job --
```

```
                                                                    14
 1              THE COURT:  Okay.
 2              MAN IN GALLERY:  -- before he was snatched.  The week
 3   that he was snatched, he was supposed to start.
 4              THE COURT:  Okay.  Well, that's good.
 5              MAN IN GALLERY:  So I just wanted to let you know he
 6   do have people behind him.
 7              THE COURT:  Good.  I can see that.
 8              MAN IN GALLERY:  If you can make it easier for the
 9   family, we would really appreciate that.
10              THE COURT:  Okay.  I'm going to --
11              MAN IN GALLERY:  I'm sorry about everything.
12              THE COURT:  Right.  I'm going to recommend that he be
13   placed as close to St. Louis as possible, and those facilities
14   include Greenville, Marion.  Now, I'll have to tell you all I
15   can do is recommend, and once in a while, the Bureau of
16   Prisons -- I recommended that one time, and the next thing I
17   saw somebody appeared in California, and I did some
18   investigation, and finally, they were sentenced at least back
19   to Chicago, but I never did get a good explanation as to why
20   they'd gone to California.  I'm not suggesting it will happen,
21   but I'm telling you they don't have to -- they don't have to
22   accept what I recommend, but I will recommend it.  Okay.
23              MAN IN GALLERY:  Thank you.
24              THE COURT:  Don't let those folks down now; you know
25   what I mean?
```

```
                                                                    15
 1              Okay.  All right.  Court's in recess.
 2              MR. STEVENS:  Judge, I'm sorry.  If I could --
 3              THE COURT:  Yes.
 4              MR. STEVENS:  -- I would move to dismiss Counts I and
 5   III.
 6              THE COURT:  Thank you.  Thank you.  I forgot.  I and
 7   III is dismissed.
 8         (Proceedings concluded at 2:57 p.m.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

16

## CERTIFICATE

    I, Gayle D. Madden, Registered Diplomate Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

    I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

    I further certify that this transcript contains pages 1 through 15 inclusive.

    Dated at St. Louis, Missouri, this 5th day of March, 2010.

_____

/s/ Gayle D. Madden

GAYLE D. MADDEN, CSR, RDR, CRR

Official Court Reporter